IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| John P. Meconi, | Case No. 3:05 CV 7276 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Verizon Wireless, | |
| Defendant. | |

### INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 15), to which Plaintiff has filed a Response in Opposition (Doc. No. 18) and Defendant has filed a Reply (Doc. No. 21). The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343.

Plaintiff has failed to show a promise of continued employment to satisfy the elements of a promissory estoppel claim. Additionally, a claim for negligent misrepresentation in an employer-employee context is not recognized in Ohio. Therefore, even drawing all inferences in favor of Plaintiff, there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law.

### STATEMENT OF FACTS

In June 2004, Plaintiff interviewed for a position as Business Sales Manager in Toledo, Ohio with Cellco Partnership, d/b/a Verizon Wireless (Verizon) (Meconi Dep. 15). Plaintiff had his first

interview with Robb Moretti, an Associate Director of Business Sales who would become Plaintiff's immediate supervisor. *Id.* The second interview was a round-table discussion with other Verizon managers, the third interview was with Tom Laughlin, Moretti's superior, and the final interview was with Greg Allen, a human resources representative (Meconi Dep. 68-69). Plaintiff accepted the position in July 2004 (Meconi Dep. 147). Plaintiff signed an employment application which clearly stated Defendant was an at-will employer (Meconi Dep. 139-41). No other employment agreement was signed (Meconi Dep. 155). The day after Plaintiff accepted this employment, he received another employment offer from SBC (Meconi Dep. 87).

During the hiring process, Moretti asked Plaintiff to develop a ninety-day business plan. The plan was a way for Plaintiff to show "how he is going to bring the performance of the Toledo team up to standard," and Moretti noted the plan was "very solid" (Pl. Resp. Summ. J. 2).

During Plaintiff's first week of employment, he was informed of Verizon's disciplinary policy set forth in the Performance Improvement Program (PIP) (Meconi Dep. 38, 147). Under the PIP, employees are progressively disciplined if they do not meet sales objectives (Moretti Dep. 20-21). The PIP policy cumulates with dismissal. Although Plaintiff claims he was not misled during the hiring process, he feels he "wasn't fully informed as to what all the parameters of this job was vis-a-vis the PIP program" (Meconi Dep. 193). Plaintiff received his first official communication regarding PIP in August 2004 but avoided any conversation with Moretti about PIP "out of fear of being terminated for showing a lack of confidence at the very outset of the new job" (Meconi Dep. 40, 47; Pl. Resp. Summ. J. 3). However, Plaintiff did fear he would be unable to meet the stated objectives in the PIP (Meconi Dep. 193-94).

2

Plaintiff was never actually disciplined under PIP, even though he could have been in January 2005 (Meconi Dep. 168-69). Plaintiff failed to meet his quota under PIP, but an exception was made based on the specific events causing Plaintiff's failure (Meconi Dep. 169).

In September 2004, Plaintiff began looking for other employment. He called SBC but the position was no longer available (Meconi Dep. 48-49). Plaintiff resigned his position in March 2005, after eight months, because he felt that he "wasn't in a position to be successful" (Meconi Dep. 191).

In June 2005, Plaintiff filed this Complaint alleging promissory estoppel and negligent misrepresentation. Defendant has moved for summary judgment on each of these counts. For the reasons stated below, Defendant's Motion is granted.

## SUMMARY JUDGMENT STANDARD

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the Court must draw all inferences from the Record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## PROMISSORY ESTOPPEL CLAIM

In Ohio, there is "a strong presumption in favor of a contract terminable at will unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other." *Henkel v. Educ. Research Council*, 45 Ohio St. 2d 249, 255 (1976). "Promissory estoppel is an

exception to rebut a presumption that the employment was at-will." *Gouge v. BAX Global, Inc.*, 252 F. Supp. 2d 509, 519 (N.D. Ohio 2003) (citing *Mers v. Dispatch Printing Co.*, 19 Ohio St. 3d 100, 105 (1985)).

Promissory estoppel will negate an at-will agreement when "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise." *Mers*, 19 Ohio St. 3d at 105. "The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted in and was detrimental to the employee." *Gouge*, 252 F. Supp. 2d at 519.

Promissory estoppel claims require justified, reasonable and detrimental reliance on a clear, unambiguous and specific promise of job security. *Gouge*, 252 F. Supp. 2d at 519; *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St. 3d 108 (1991); *Rudy v. Loral Defense Sys.*, 85 Ohio App. 3d 148 (1993); *Shaw v. J. Pollock & Co.*, 82 Ohio App. 3d 656 (1992); *Penwell v. Amhurst Hosp.*, 84 Ohio App. 3d 16 (1992). The existence of a promise is the threshold question. Plaintiff claims that Moretti's approval of his ninety-day business plan and the contemporaneous omission of PIP creates a promise of continued employment.

Under Ohio law, a promise must be clear and unambiguous in its terms. *Rudy*, 85 Ohio App. 3d at 154. Vague or nebulous assurances of job security are not sufficient. *Gouge*, 252 F. Supp. 2d at 519 (holding that "I don't want you guys to worry about it, we're going to take care of you. You guys are going to get to run it," is not specific enough for promissory estoppel); *Lake v. Wolff Brothers Supply, Inc.*, No. 63959, 1993 WL 462866, at *5-7 (Ohio Ct. App. Nov. 10, 1993) ("with

4

this kind of partnership, you will have a job until you retire" was not a specific promise for continued employment until retirement); *Klaus v. Hilb, Rogal & Hamilton Co. of Ohio*, 437 F. Supp. 2d 706, 729 (S.D. Ohio 2006). The subjective expectations of the employee are irrelevant as to the existence of a promise. *Gunthorpe v. Daimler Chrysler Corp.*, 205 F. Supp. 2d 820, 826 (N.D. Ohio 2002), *rev'd on other grounds*, 90 Fed. Appx. 877 (6th Cir. 2004) (plaintiff's own plans to work for employer for twelve-fifteen years, and the notation of these plans by an interviewer, is not a promise of continued employment when plaintiff was never **expressly** told he would be retained that long).

Ohio courts have also held that "[p]raise regarding job performance or discussion of future career development are insufficient to establish promissory estoppel. The statement must be a **specific promise** of continued employment." *Dolan v. St. Mary's Mem. Home*, 153 Ohio App. 3d 441, 449 (2003) (emphasis added); *Boggs v. The Scotts Co.*, No. 04AP-425, 2005-Ohio-1264 at ¶¶28-30 (Ohio Ct. App. 2005) (Employer's comments that "she was an integral part of the team and would retain her management role" and the promise that "her position was secure," were only statements of "general praise, which did not rise to the level of a specific promise of employment." Plaintiff's "subjective interpretation of her supervisors' praise was insufficient to raise a genuine issue of fact regarding her promissory estoppel claim"). Additionally, vague statements of business or career prospects are not sufficient to establish a promise. *Dahl v. Battelle Memorial Institute*, No. 03AP-1028, 2004-Ohio-3884 at ¶23 (Ohio Ct. App. 2004) (statements that there were no time or budget constraints for group projects, and that employer had no intention of letting personnel go were vague statements and not a promise of continued employment); *Lake*, 1993 WL 462866, at *5-7 ("Don't worry. If you do this well, you will have this position forever," was not a specific promise of continued employment).

5

Here, the alleged promise of continued employment is based upon approval of a ninety-day business plan. At no point in time did Moretti or any supervisor tell Plaintiff that he would not be an at-will employee for the ninety days needed to implement his plan (Meconi Dep. 33). In fact, Plaintiff's signed employment application specifically states that his employment is at-will, which Plaintiff admits gives the employer the right to end the employment at any time (Meconi Dep. 138-141). Even after completing the ninety-day business plan and after Moretti's approval, Plaintiff still believed he could be terminated at any time (Meconi Dep. 40). Plaintiff, however, asserts that the business plan approval promised him job security. Plaintiff relies on Moretti's statements that the plan was "Plaintiff's way of how he is going to bring the performance of the Toledo team up to standard," and that Plaintiff's plan was "very solid" (Pl. Resp. Summ. J. 2). The statements surrounding the ninety-day business plan are vague, and scarcely rise to the level of clarity and specificity required by Ohio courts to prove promissory estoppel. If statements that "you will have this position forever" or "[d]on't worry, we'll take care of you," are not promises of job security or continued employment, the approval of a ninety-day business plan can hardly be a promise for the purposes of promissory estoppel.

Furthermore, Plaintiff's reliance is based on his own subjective assumptions. Plaintiff clearly states that he "considered Moretti's approval of the business plan to comprise a 'promise,' one on which [he] relied. [He] **believed** . . . that he was being granted time to 'rebuild' the Toledo office" (Pl. Resp. Summ. J. 2) (emphasis added). Plaintiff has also described the ninety-day business plan as "this **seeming** mandate" (Pl. Resp. Summ. J. 2) (emphasis added). Plaintiff also **assumed** that he would receive two years of guaranteed employment because his predecessors did (Pl. Resp. Summ. J. 3).

6

Plaintiff further states that he **thought** "he would have **perhaps** two (2) years" (Pl. Resp. Summ. J. 4) (emphasis added).

Finally, Defendant points out that "if mere approvals of subordinates' business planning constituted binding promises of continued employment, the at-will doctrine would be meaningless" (Def.'s Reply Memo. 2). This Court agrees. To find a promise of continued employment in the approval of a ninety-day business plan would contradict the stated public policy in Ohio that contracts be treated as at-will unless it is clearly otherwise. And here, the contract clearly stated Plaintiff's employment was at-will.

Plaintiff has shown insufficient evidence of a clear and unambiguous promise. Any guarantees from the approval of a ninety-day business plan are nebulous and cannot be construed as a promise of continued employment. At best, Moretti's statements about the plan are praise for the plan itself and, as noted in *Boggs*, praise cannot constitute a promise for promissory estoppel purposes. *Boggs*, 2005-Ohio-1264 at ¶¶ 28-30. Plaintiff's own assumptions, speculations and expectations arising from such praise cannot create a promise where no promise existed. (At best, Plaintiff might claim an implied promise of perhaps ninety days, though he voluntarily resigned after eight months.)

The parties do not dispute that a ninety-day business plan was created by Plaintiff at Moretti's request, or the absence of a PIP discussion during the hiring process. In the absence of any specific promise for Plaintiff's continued employment, Plaintiff fails to prove an essential element of his claim, and reasonable minds could come to but one conclusion. Therefore, dismissal of the promissory estoppel claim is granted.

7

**NEGLIGENT MISREPRESENTATION CLAIM**

"No court in Ohio has held the tort of negligent misrepresentation applicable to the employer-employee relationship." *Vickers v. Wren Industries, Inc.*, No. Civ.A. 20914, 2005-Ohio-3656 at ¶47 (Ohio Ct. App. 2005); *Nichols v. Ryder Truck Rental, Inc.*, No. CV-215168, 1994 WL 285000, at *4-5 (Ohio Ct. App. June 23, 1994). "Ohio courts have demonstrated a willingness to extend liability for negligent misrepresentation only in special cases." *Bellios v. Victor Balata Belting Co.*, 724 F. Supp. 514, 519 (S.D. Ohio 1989).

Plaintiff cites two cases which consider a negligent misrepresentation claim in the employer-employee context. *Baker v. Northwest Hauling*, No. WD-02-050, 2003-Ohio-3420 (Ohio Ct. App. 2003); *Brainard v. Toledo*, 118 Ohio Misc. 2d 158, 2001-Ohio-4352 (Lucas Cty Comm. Pl. 2001). In each case, the court found that the negligent misrepresentation claim failed, and neither court addressed whether the application of the negligent misrepresentation claim to the employer-employee relationship was proper.[1]

Even if this Court were to recognize a claim for negligent misrepresentation arising out of an employer-employee relationship, Plaintiff's claim would fail as a matter of law. Under Ohio law, negligent misrepresentation requires Defendant to: (1) supply false information; (2) for the guidance of others in their business transactions; (3) causing pecuniary loss to Plaintiff; (4) while Plaintiff justifiably relied upon the information; (5) and while Defendant failed to exercise reasonable care or

---

[1] Other federal courts have indicated that negligent misrepresentation in an employer-employee relationship is not a recognized cause of action in Ohio. *Bellios*, 724 F. Supp. at 519 (stating it had a "deep apprehension" about the application of negligent misrepresentation in an employer-employee relationship); *Comer v. ENSR Operations*, Civ.A. No. 2:93-0317, 1994 WL 800274, at *10-11 (S.D.W.Va. Aug. 5, 1994) (stating that *Nichols* was instructive on Ohio's treatment of negligent misrepresentation in an employer-employee setting, and that it "is at least highly doubtful that Ohio law would sanction a negligent misrepresentation claim in the context of this action").

competence in obtaining or communicating the information. *Picker Int'l., Inc. v. Mayo Found.*, 6 F. Supp. 2d 685, 689 (N.D. Ohio 1998).

Omissions by a defendant, standing alone, are not sufficient for a negligent misrepresentation claim. An affirmative false statement is required. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 149 (1996). Plaintiff claims that "the affirmative false statement made to John Meconi was Robb Moretti's validation of Meconi's proffered business plan . . ." (Pl. Resp. Summ. J. 12).

However, as Defendant points out, Plaintiff fails to state how the Moretti "validation" was a false statement. Moretti asked Plaintiff to complete a ninety-day business plan which Moretti subsequently approved. There is no indication that Moretti did not have the authority to approve the plan, nor is there evidence that Moretti did not truly think the plan was a solid business plan. The only affirmative statements made by Moretti were that he wanted to see a business plan and that he approved of Plaintiff's plan. Neither statement has been shown to be false. Plaintiff's subjective belief that these statements assured him personal discretion in managing the Toledo sales office is immaterial to this element. Moretti's statements were not affirmative false statements as required for the first element of his negligent misrepresentation claim. The failure to show an affirmative false statement is sufficient to dismiss the negligent misrepresentation claim as a matter of law.

Even if Plaintiff had shown a false statement, Plaintiff fails to show that he suffered a pecuniary loss arising out of his reliance. Plaintiff claims he had a job offer at SBC prior to accepting a position with Defendant, but the SBC position was no longer available when he began looking for other employment in September 2004 (Meconi Dep. 15, 48-49). Plaintiff has not shown that by taking the SBC position he would have made more money or avoided monetary loss. Furthermore, the

Record is void of any detriment to Plaintiff during his Verizon employment. Plaintiff was not fired or disciplined during that time period. In short, the Record contains insufficient evidence to support a pecuniary loss.

Additionally, Plaintiff fails to show justifiable reliance on Moretti's statements. Plaintiff claims he believed Moretti's statements allowed him personal discretion in managing the store without interference from corporate policies like PIP (Meconi Dep. 61). PIP is essentially a quota system with possible termination if the sales quotas are not met (Moretti Dep. 20). Even if Moretti's statements were shown to be false, Plaintiff cannot show justifiable reliance because Plaintiff had actual notice that quotas were part of Defendant's sales operations and that he was an at-will employee, subject to termination at any time (Meconi Dep. 20, 28, 40). Therefore, Plaintiff had actual notice that he would not have complete personal discretion in managing the sales office, and his reliance on Moretti's validation of the business plan to give Plaintiff that discretion was unjustifiable.

For these reasons, Plaintiff's claim for negligent misrepresentation fails, even if the claim applies to the context of this case. Therefore, dismissal of the negligent misrepresentation claim is granted as well.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. No. 15) is granted.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

October 17, 2006